**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ROBERT C. DALTON,

           Plaintiff,

   v.

TANJU KARANFIL, et al.,

           Defendants.

Civil Action No. 19-17645 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Dr. Tanju Karanfil, Dr. James P. Clements, and Clemson University's ("Defendants") Motion to Dismiss Plaintiff Robert C. Dalton's ("Plaintiff") Amended Complaint. (ECF No. 14.) Plaintiff opposed (ECF No. 19), and Defendants replied (ECF No. 21). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is granted.

**I.    BACKGROUND**

Plaintiff proceeds *pro se* in this matter. According to the Amended Complaint, Plaintiff is the managing partner, sole member, and only representative of ESTEC Technology Works, LLC ("ETW"). (Am. Compl. 3, ECF No. 3.) In 2017, Plaintiff sought "a permit to grow hemp under the 2014 hemp law of South Carolina" on behalf of ETW. (*Id.* at 4.) Plaintiff avers that a permit would have allowed ETW "to grow hemp, manufacture hemp products, market hemp products,

[and] buy and sell hemp products in South Carolina with the South Carolina Department of Agriculture ("SCDA")." (*Id.*)

Plaintiff alleges that his application faced at least two obstacles. First, according to Plaintiff, South Carolina law requires that "the permit application has to be submitted by an individual, and this individual had to be a resident of South Carolina." (*Id.*) Plaintiff avers that he "was not a resident of South Carolina at the time" of his application in 2017, (*id.* at 5), and that he is currently a citizen of New Jersey, (*id.* at 3). Additionally, a hemp permit application reportedly requires "that the applicant . . . participate in research with a qualified [South Carolina] institute of higher education in conjunction with the SCDA." (*Id.* at 5.) Plaintiff asserts that Defendants, "who are members of an institution of higher education [Clemson University]" and who had "engaged in research on industrial hemp[,] . . . refused to work with Dalton/ETW (a.k.a. Planet Energy) in the Clemson University Industrial Pilot Program under the South Carolina Industrial Hemp Program in conjunction with" the SCDA. (*Id.* at 7.) Indeed, Plaintiff alleges that Clemson University Vice President of Research Dr. Tanju Taranfil, Clemson University President Dr. James P. Clements, Clemson University, and possibly others "banded and conspired together with the intent to injur[e], to oppress, to harm and to prevent" Plaintiff and ETW from participating in South Carolina's industrial hemp initiatives. (*Id.* at 4.) According to Plaintiff, "[t]his lack of research agreement with [Clemson University,]" combined with the lack of cooperation from South Carolina residents, among other issues, hindered Plaintiff's September 2017 application and prevented Plaintiff and ETW from obtaining the desired permits. (*Id.* at 11-12, 15.)

In support of these allegations, Plaintiff describes a number of contacts between himself and Defendants. Plaintiff reports that in August 2017, he sent "over a hundred emails out across South Carolina" to "science, medical, and engineering researchers." (*Id.* at 8.) Plaintiff maintains

that he eventually "reached an agreement for agricultural economic research with the agricultural side of Clemson University through Dr. [Jeanne] Briggs who worked for Dr. [Christopher] Ray." (*Id.* at 8.)[1] Additionally, Plaintiff alleges that by September 4, 2017, there were also "two engineering researchers associated with [Clemson University] who wanted to work with Dalton/ETW on their research ideas." (*Id.* 8-9.) These engineering researchers "were associated with Dr. Karanfil's section of the [South Carolina Industrial Hemp Pilot Program]." (*Id.* at 9.) Nevertheless, on September 5, 2017, Defendants reportedly emailed Plaintiff and informed him that the researchers under Dr. Karanfil's supervision at the South Carolina Industrial Hemp Pilot Program would not be able to work with him. (*Id.* at 5-6.) Later that day, Plaintiff was informed that doctors Briggs, Ray, and Nathan Smith,[2] an agricultural economist apparently affiliated with Clemson, would also not be able to work with him. (*Id.* at 9.) From then on, Plaintiff reports a number of unsuccessful attempts to contact various Clemson University officials in an effort to understand why the University declined to work with him on his proposed projects. (*Id.* at 9-10.)

Plaintiff brings several claims in his Amended Complaint. Plaintiff alleges that the Defendants "likely . . . violated" Title II of the Americans with Disabilities Act ("ADA"). (*Id.* at 6.) Plaintiff maintains that he has a disability arising from a traumatic brain injury ("TBI"). (*Id.* at 3.) According to Plaintiff, Dr. Clements "did not respond to [Plaintiff's] request for an explanation as to why [Defendants] would not work with [him]." (*Id.* at 17.) Plaintiff maintains that the ADA "requires that public entities, such as [Clemson University], have an effective Communication Standard for Disabilities." (*Id.*) Plaintiff asserts that "[t]here is a strong likelihood that [Defendants] do not have a written Effective Communication Standard for

---

[1] Neither Dr. Briggs nor Dr. Ray are named as Defendants in this action.

[2] Dr. Smith is also not named as a Defendant in this action.

3

communication with someone with a moderate to severe TBI; An effective communication standard for the TBI disability would include that a reasonable answer be given to the individual who has a TBI." (*Id.*) Plaintiff also appears to bring claims under South Carolina's criminal laws. (*Id.* at 6-19.) Finally, Plaintiff appears to bring constitutional claims against Defendants. (*Id.* at 19-20.)

## II.   LEGAL STANDARD

### A.   Personal Jurisdiction

For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . not mere allegations." *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks and citation omitted); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

### B.   Failure to State a Claim

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me."

*Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiffs' opposition to a motion to dismiss. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

*Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiffs' opposition to a motion to dismiss. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers . . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   DISCUSSION

### A.   Personal Jurisdiction

Plaintiff's claims must be dismissed for failing to demonstrate that the Court has personal jurisdiction over Defendants. A district court "must not only have subject matter jurisdiction over the litigation before it, but also personal jurisdiction over the defendants. A court may not go through the sterile exercise of acting in a vacuum to adjudicate a legal dispute. It must have parties as well as an actual controversy." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey State law. New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (internal citations omitted). "Thus, parties who have constitutionally minimum contacts with New Jersey are subject to suit there." *Id.* (internal quotation marks omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d Cir. 2007); *see also Helicopteros Hacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Here, Clemson University and doctors Clements and Karanfil each submit affidavits challenging the

Court's general jurisdiction over them. (*See* Exs. A, B, & C to Lock Decl., ECF No. 4.) Plaintiff does not appear to challenge Defendants' assertions that the Court lacks general jurisdiction over them. (*See generally* Pl.'s Opp'n Br., ECF No. 19.) Rather, Plaintiff maintains that the Court has specific jurisdiction over Defendants because "[e]nough contacts were made from and with New Jersey that allow for three (3) agreements between the [P]laintiff and researchers from Clemson University prior to the [D]efendants['] retaliat[ion] against the [P]laintiff." (*Id.* at 8.)

Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully directed its activities at the forum"; (2) the litigation "arise[s] out of or relate[s] to at least one of those activities"; and (3) the exercise of jurisdiction "comports with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotation marks and citations omitted). "The defendant need not be physically located in the state while committing the alleged acts." *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum." *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

In support of specific jurisdiction, Plaintiff submits an affidavit alleging that he "sent out over 700 emails to South Carolinian researchers" at four South Carolina universities with over ten researchers responding. (Dalton Aff. *21, ECF No. 19.)[3] Plaintiff further avers that a "Clemson representative reached out to [him] in New Jersey [to] create agreement in response to [his] emails from New Jersey." (*Id.*) Nevertheless, "[i]t is well established . . . that a nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." *Sunbelt Corp. v. Noble,*

---

[3] Page numbers preceded by an asterisk refer to the page number on the ECF header.

7

*Denton & Assocs.*, 5 F.3d 28, 32 (3d Cir. 1993) (citing *Burger King*, 471 U.S. at 478). Moreover, "informational communications in furtherance of [a] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [a nonresident defendant]." *CBD & Sons, Ltd. v. Setteducati*, No. 18-4276, 2019 WL 396982, at *7 (D.N.J. Jan. 31, 2019) (quoting *Sunbelt*, 5 F.3d at 32). In order for specific jurisdiction to be conferred on the basis of the defendant's contacts with forum residents, "the relationship must arise out of contacts that the defendant *himself* creates within the forum state." *Id.* at *6 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Here, Plaintiff acknowledges that to the extent Defendants had any contact with New Jersey, it was Plaintiff who created those contacts. Accordingly, Plaintiff has not demonstrated that Defendants purposefully directed activities at New Jersey such that the Court can assert specific personal jurisdiction over them.

### B. Plaintiff's Claims Based on South Carolina Criminal Law

Even if the Court had personal jurisdiction over the Defendants, Plaintiff's state law claims would fail. Plaintiff brings five claims based on Title Sixteen of South Carolina's statutes governing "Crimes and Criminal Offenses." Plaintiff's claims include: (1) South Carolina Code 16-5-10 (Conspiracy Against Civil Rights); (2) South Carolina Code 16-5-20 (Punishment for Additional Crimes); (3) South Carolina Code 16-7-150 (Slander and Libel); (4) South Carolina Code 16-11-510 (Malicious Injury to Animals and other Personal Property); and (5) South Carolina Code 16-17-410 (Conspiracy). (Am. Compl. 6-19.)

Under South Carolina law, however, Plaintiff lacks a private right of action to bring these claims. "The primary consideration in deciding whether a private cause of action should be implied under a criminal statute is legislative intent." *Adkins v. S.C. Dep't of Corr.*, 602 S.E. 2d 51, 54 (S.C. 2004). "Where a statute does not specifically create a private cause of action, one can

8

be implied only if the legislation was enacted for the special benefit of a private party." *Id.* After reviewing these statutes, the Court can discern no indicia of legislative intent to provide civil plaintiffs a private right of action to enforce these laws. Nor has Plaintiff's opposition brief directed the Court to any evidence of such intent. Indeed, in his opposition brief, Plaintiff informs the Court that the Amended Complaint's references to criminal claims were made in error and are no longer relevant. (Pl.'s Opp'n Br. 5, 9-10.) Accordingly, the Court will grant Defendants' Motion to Dismiss these claims for failure to state a claim.

### C. Constitutional Claims

Construing the Amended Complaint liberally, Plaintiff appears to allege federal constitutional violations. Even if the Court had personal jurisdiction over Defendants, these claims would also fail.

According to the Amended Complaint, "[t]he State of South Carolina violates the [C]ommerce [C]lause of the U.S. Constitution by when the State [sic] controls the right of the [First] Amendment of the U.S. Constitution of an individual when the individual travels across state lines when having to file civil action in South Carolina." (Am. Compl. 19-20.) The Court notes, however, that the State of South Carolina is not named as a Defendant in this action. (*Id.* at 2-3 (naming Clemson University, and doctors Karanfil and Clements as Defendants).) Moreover, although some of the alleged facts may well sound in the Dormant Commerce Clause, it is not clear how the First Amendment is intertwined with these issues.

A district court may sua sponte "dismiss a complaint for failure to comply with Rule 8 when the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *El Mujaddid v. Brewer*, 808 F. App'x 73, 76 (3d Cir. 2020). The Plaintiff is "required to plead a short and plain statement of the claim, more than just legal conclusions and vague assertions." *Id.* The foregoing vague and confused statement regarding

Plaintiff's potential constitutional claims against an entity not joined as a party to this matter is not a short plain statement giving the actual Defendants notice of the claims against them. With respect to Plaintiff's constitutional claims, the Court cannot find that Rule 8(a)'s notice pleading requirements have been met.

### D. ADA Claims

Finally, even if the Court had personal jurisdiction over Defendants, the Court would dismiss Plaintiff's ADA claims. To succeed on a claim under Title II of the ADA, a plaintiff must demonstrate: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Bowers v. NCAA*, 475 F.3d 524, 553 n.31 (3d Cir. 2007). As Defendants argue, the Amended Complaint does not adequately plead facts to allege that Plaintiff was qualified for the program from which he was allegedly excluded.[4]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[4] At this time, the Court declines to address Defendants' arguments that as a matter of law, doctors Clements and Karanfil cannot be individually liable for Title II violations. (Defs.' Moving Br. 33, ECF No. 14-1.) The Court also declines to address Defendants' arguments that the Eleventh Amendment bars ADA claims against Clemson University. (*Id.*)

10